FILED'11 APR 21 16:09USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ELIZABETH SNOW; DANIEL Q. BURDICK; )
LINDA THOMS; R. DRAKE EWBANK; )
on behalf of themselves and all )
other individuals similarly )
situated, )
                                                      )
            Plaintiffs, )    Case No. 10-6224-HO
                                  )
               v. )    ORDER
                                  )
RALPH SUMMERS, in his official )
capacity; THE STATE of OREGON )
DEPARTMENT of HEALTH and HUMAN )
SERVICES; THE STATE OF OREGON; )
OREGON GOVERNOR THEODORE )
KULONGOSKI in his official )
capacity; the OREGON DEPARTMENT OF )
JUSTICE; LANE COUNTY MENTAL HEALTH )
SERVICES; LANE COUNTY OREGON )
DIRECTOR ROB ROCKSTROH, in his )
official capacity; MICHEL FARIVAR, )
M.D., in his official capacity; )
                                    )
            Defendants. )
_____)

INTRODUCTION

On February 8, 2011, plaintiffs appearing *pro se*, filed

1 - ORDER

their Second Amended Complaint, a proposed class action alleging "numerous violations of rights" pursuant to the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA), as well as "discriminatory acts" by state and county defendants. [#47].

State defendants move to strike "irrelevant and impertinent allegations in certain enumerated paragraphs[1] in plaintiffs' second amended complaint and to dismiss the State of Oregon, the Governor, the Oregon Department of Human Services and Ralph Summers for failure to state a claim. [#53].

County defendants move to dismiss plaintiff's RA claim; and all claims against Dr. Michel Farivar. [#55]. County defendants also move to amend the case caption to remove Lane County Mental Health Services as a defendant[2] and to strike unspecified "impertinent and immaterial" matter from the Second Amended Complaint. *Id.*

## DISCUSSION

This action appears to stem from plaintiffs' objections to government entities cancelling their contracts with two peer-run mental health organizations, SAFE Inc., and Crystal Dimensions. [#47; #54-p.4; #56-p.4].

---

[1] Specifically the state defendants move to strike paragraphs 4, 40-46, 49, 50, 57 and 58.

[2] The motion to remove Lane County Mental Health Services was made moot by this court's order dated March 21, 2011, granting plaintiffs' motion to delete. [#57; #83].

2 - ORDER

1.  Defendants' Motion to Strike:

Before responding to a pleading, a party may move to strike any "redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). A Rule 12(f) motion to strike aims to avoid the expenditure of time and money by dispensing with spurious issues prior to trial. *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

"One test that has been advanced for determining whether an allegation in a pleading is immaterial and impertinent within the meaning of Rule 12(f) is whether proof concerning it could be received at trial; if it could not, then the matter is immaterial and impertinent." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706-07 (2d Ed.1990). In other words, material that has no essential or important relationship to the claim for relief or the defenses being pleaded, can be stricken. *Fantasy Inc. V. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993); rev'd on other grounds, 510 U.S. 517 (1994).

The rationale behind granting a motion to strike is to avoid prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegation any unnecessary notoriety. *Wailua Assocs v. Aetna Cas. & Sur. Co.*, 183 F.R.D 550, 553 (D.Haw. 1998). Thus, a motion to strike is disfavored in the absence of prejudice. *Id.* at 555.

3 - ORDER

The state defendants move to strike all allegations in paragraphs 4, 40, 49, and 58 regarding the rights and injuries of SAFE Inc., and Crystal Dimensions and to strike paragraphs 41-46, 50 and 57 entirely. [#54 - pp.5-6]. State defendants assert that these entities are not protected under either the ADA or RA, which protect individuals, not organizations. [42 U.S.C. §12132 (prohibiting discrimination against qualified individuals with a disability); 42 U.S.C. §12203 (prohibiting retaliation or coercion against individuals); 29 U.S.C. §794(a)(prohibiting discrimination against any person)].

The county defendants move to strike allegations asserting: unlawful harm to or discrimination against, SAFE Inc and Crystal Dimensions or unlawful discrimination against plaintiffs in their capacity as employees or agents of or volunteers for SAFE Inc and/or Crystal Dimensions. [#56-pp.9-10].

Defendants bear the burden on their motions to strike. *Becker v. Wells Fargo Bank NA,* 2011 WL 1103439, *6 (9th Cir. 2011). The standard for granting such a motion is high and should be used to eliminate serious risks of prejudice, delay or confusion of the issues. *Id.*

Given the liberal construction afforded *pro se* plaintiffs' pleadings, I find little evidence of serious risk of prejudice, delay or confusion to the various government defendants and therefore deny both the state and county defendants' motions to

4 - ORDER

strike. I assure the parties that inappropriate allegations will not be taken into account as the court considers defendants' motions to dismiss, or submitted to a jury.

2.  Motions to Dismiss:

Plaintiffs allege: (1) discrimination in violation of Title II of the ADA by (a) "treating SAFE and Crystal Dimensions disparately and unequally compared to other mental health providers who were not operated by individuals with psychiatric disabilities", (b) "stereotyping and stigmatizing Plaintiffs on the basis of their disabilities" and (c) "creating a hostile environment for people with psychiatric disabilities attempting to run a consumer-directed service provision . . . or work in the Defendant's system of care"; (2) retaliation in violation of Title V of the ADA; and (3) discrimination in violation of the RA by using "methods of administration intentionally to make it fiscally impossible for plaintiffs to tenably operate a mental health services program and by doing so excluded them from participation . . .in Defendants' contracted programs." [#47].

State defendants move to dismiss plaintiffs' claims because: (1) state entities are not required to ensure that individuals with disabilities receive a specific variant of services (such as a peer-run service) or receive services from certain specific providers; (2) plaintiffs have failed to state a claim under Title V of the ADA or the RA; (3) plaintiffs have not articulated

5 - ORDER

viable claims against the State of Oregon, the Oregon Department of Human Services, Ralph Summers, the Oregon Department of Justice or the Governor of Oregon; and (4) the State of Oregon has not waived its Eleventh Amendment immunity from suit in federal court. [#53; #54; #95].

The county defendants move to dismiss plaintiffs' RA claim, and all claims against Dr. Farivar. [#55; #56; #92].

A.  Standards:

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) is proper only where there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory. *Balisteri v. Pacific Police Dept.*, 901 F.2d 696,699 (9th Cir.1990). The issue is not whether the plaintiff is likely to succeed on the merits but if the complaint is sufficient to entitle the plaintiff to proceed beyond the pleadings in an attempt to establish his claim[3]. *De La Cruz v. Torrey*, 582 F.2d 45, 48 (9th Cir 1978). Leave to amend a deficient complaint must be granted "... [u]nless it is absolutely clear that no amendment can cure the defects." *Lucas v. Dep't of Corrections,* 66 F.3d 245, 248 (9th Cir. 1995).

B.  Plaintiffs' First Claim under Title II of the ADA:

Plaintiffs base their first theory of liability, at least in

---

[3]   Defendants' arguments are noted to be better suited to a motion for summary judgment than a motion for dismissal.

6 - ORDER

part, on the Supreme Court decision which interpreted a failure to provide Medicaid services in a community-based setting as a form of disability discrimination in contravention of Title II of the ADA.  *Olmstead v. L.C.,* 527 U.S. 581 (1999).

The *Olmstead* Court relied in part, on the ADA's regulations, which direct that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." *Olmstead,* 527 U.S. at 592, (quoting 28 C.F.R. §35.130(d)).  The Rehabilitation Act's regulations similarly provide that "[r]ecipients [of federal financial assistance] shall administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons."  28 C.F.R. §41.51(d).  In this respect, the ADA and the RA have been read to contain an "integration mandate." *Arc of Wash. State Inc., v. Braddock,* 427 F.3d 615, 618 (9th Cir.2005).

While a state may violate the integration mandate where it unjustifiably forces (or likely will force), beneficiaries from an integrated environment into institutional care, this integration mandate is balanced against a state's need to maintain a range of facilities for the care and treatment of persons with diverse mental disabilities.  *Olmstead* 527 U.S. at 597.  The state's responsibility is not boundless.  *Id.* at 603.

A state participating in the Medicaid program has

7 - ORDER

substantial discretion to choose the proper mix of amount, scope, and durational limits on the benefits it provides, so long as otherwise qualified disabled individuals are afforded meaningful and equal access to the benefits offered. *Alexander v. Choate*, 469 U.S. 299 (1985). The state defendants[4] correctly note that there is nothing mandating that any state entity provide peer-run mental health services or that plaintiffs receive services from certain specific providers.

Whether plaintiffs will be able to produce evidence that the state and county defendants' actions eliminated or substantially impaired their ability to obtain or contract to provide publically funded mental health services in Lane County as compared to the opportunities afforded non-disabled persons has not been established. So, while plaintiffs' pleadings may not at this juncture, be sufficient to survive on the merits, liberally construed, they are sufficient to proceed against the state defendants[5] beyond the initial pleadings.

---

[4] The court notes without comment, the state's Eleventh Amendment argument asserting that the Ninth Circuit incorrectly found that Congress validly abrogated its sovereign immunity with Title II of the ADA and waived its sovereign immunity under the RA by accepting federal funds. [#54-p.16 citing *Miranda v. Kitzhaber*, 328 F.2d 1181, 1185 (9th Cir. 2003)].

[5] The plaintiffs do not allege any facts that could implicate the governor and thus claims against the governor of Oregon are dismissed.

8 - ORDER

C. <u>Plaintiffs' second claim under Title V of the ADA:</u>

Plaintiffs second claim alleges that state and county defendants retaliated and/or coerced plaintiffs because of plaintiffs' lawsuit against Lane County, in violation of Title V of the ADA. [#47-pp. 27-28]. By so doing, plaintiffs allege that defendants excluded plaintiffs from participation in defendants' contracted mental health programs also in violation of the ADA. *Id.*

Title V of the ADA contains prohibitions against retaliation and coercion of individuals with disabilities when they oppose an unlawful practice or, aid or encourage another individual exercising a right granted under the ADA. 42 U.S.C. §12203(a) and (b). To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show that: (1) s/he engaged in a protected activity; (2) suffered an adverse action; and (3) there was a causal link between the two. *Brown v. City of Tucson,* 336 F.3d 1181, 1186-87 (9th Cir.2003). Coercion can include the application of sanctions or force by a government to compel dissenters to conform. *Walker v. City of Lakewood,* 272 F.3d 1114, 1128 (9th Cir. 2001). Termination of a contract can be an adverse action. *Id.* at 1130.

Specifically, plaintiffs allege that state defendant Summers "personally blocked appropriate administrative action" which lead to their contract cancellation. [#47-p.20]. They also allege

9 - ORDER

that the Oregon Department of Justice actively discriminated against plaintiffs by interfering with plaintiffs' Lane County lawsuit involving plaintiffs' contractual relationship with the county. [#47-pp.20-22]. Similarly, plaintiffs allege that county officials retaliated against them by causing plaintiffs to lose funding and closing plaintiffs' clinical program because of their lawsuit. [#47-pp.19-28].

The issue before the court on a motion to dismiss is not whether plaintiffs' allegations have merit but, rather, whether the moving defendant has shown beyond doubt that plaintiffs cannot prove any set of facts entitling them to relief. Construing the allegations in plaintiffs' favor, it is not apparent at this stage of the litigation that there are no facts that could be proved to support plaintiffs' allegations of retaliation or coercion.

D.   <u>Plaintiff's Third Claim under the Rehabilitation Act</u>:

Plaintiffs allege defendants used "methods of administration" to intentionally make it fiscally impossible for plaintiffs to operate a peer-run mental health services program. [#47-p.29].

The RA prohibits exclusion from participation in or discriminatory denial of services based on a disability. 29 U.S.C. §794(a). To establish a violation of the RA, plaintiffs must show that: (1) they are disabled within the meaning of the

statute; (2) they are "otherwise qualified" with or without reasonable accommodation for the services; (3) they were denied the services because of their disability; and (4) the particular services they were denied received federal financial assistance.

Aside from the requisite determination that the desired services received federal financing, there is no significant difference in analysis of the rights and obligations created by the ADA and the RA. Plaintiff's third claim (as was their first claim), is similarly found to be sufficient to proceed beyond the initial pleadings.

## CONCLUSION

Based on the foregoing, the State defendants' Motion to Strike and to Dismiss [#53] is GRANTED in part and DENIED in part as follows: granted as to all claims against the Governor of Oregon and denied for all remaining state defendants. The County defendants Motion to Dismiss and to Strike is DENIED. [#55].

IT IS SO ORDERED

DATED this 21st day of April, 2011.

 Michael P. Hogan
UNITED STATES DISTRICT JUDGE

11 - ORDER