IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ELIZABETH SNOW, DANIEL,
Q. BURDICK, LINDA THOMS,
R. DRAKE EWBANK, on behalf
of themselves and all other
individuals similarly situated,

    Plaintiffs,

v.

LANE COUNTY MENTAL HEALTH
SERVICES, et al.,

    Defendants.

Case No. 6:10-cv-06224-AA

AMENDED OPINION AND ORDER

AIKEN, Chief Judge:

    Plaintiffs filed suit against defendants alleging violations of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. Defendant Lane County Mental Health Services (the County), the sole remaining defendant in this case, now moves for summary judgment. Upon review of the arguments and evidence presented, the County's motion is granted.

1 - OPINION AND ORDER

BACKGROUND

Lane County is a political subdivision comprised of departments, divisions and programs, including the Health and Human Services department, the Behavioral Health division, and the LaneCare program. At the time of this dispute, LaneCare was a public insurance company that contracted with mental health providers to offer a full range of community-based services.

In approximately 2000, Lane County Behavioral Health contracted with SAFE, Inc. (SAFE) to provide non-Medicaid services to qualified Behavioral Health clients. In 2006, SAFE formed a corporate sub-division named Valia to provide Medicaid reimbursable services through LaneCare. Plaintiffs Ewbank and Snow are former employees or volunteers of SAFE and/or Valia, and plaintiffs Burdick and Thoms were consumers of the services provided by those organizations.

LaneCare authorized a Certificate of Approval for Valia and offered technical assistance to assist Valia in complying with Medicaid regulatory requirements. According to the County, this technical assistance was similar to a site review process in scope and duration, in order to prepare Valia for the formal site review required of all Medicaid reimbursable mental health service providers. Plaintiffs dispute the level of assistance provided.

The County contends that after five attempts to help Valia become minimally compliant with Medicaid rules, little improvement

2 - OPINION AND ORDER

was made and Valia remained non-compliant. Plaintiffs dispute the County's assertion. They maintain that during this period of time, Ewbank, who served as the director of both SAFE and Valia, alleged that SAFE and Valia were being treated unfairly by County employees Mari Jones, Rob Rockstroh, Michel Farivar, and Marcia Johnson, as well as numerous State of Oregon employees.

Also during this time, the County received numerous complaints about Ewbank from Valia workers, including complaints that Ewbank withheld employees' paychecks, harassed Valia employees, screamed at a SAFE employee, had sexual relations with Valia employees and clients, and instructed an employee to charge Medicaid for non-eligible services. The County also received complaints that Ewbank used a SAFE credit card to purchase pornography, jewelry, and airplane tickets to visit his fiancee in Russia.

The County subsequently terminated its contracts with SAFE and Valia. According to the County, it severed its dealings with SAFE due to Valia's and SAFE's lack of compliance with Medicaid rules and regulations and Ewbank's lack of judgment.

SAFE filed a lawsuit in Lane County Circuit Court alleging: 1) breach of contract; 2) retaliation under Or. Rev. Stat. § 430.673; 3) breach of the implied duty of good faith and fair dealing; and 4) violations of the ADA and Rehabilitation Act. In June 2010, a jury found that the County did not breach its contract with SAFE or its duty of good faith and fair dealing, and that SAFE had breached

3 - OPINION AND ORDER

its contract with the County. See Defs.' Ex. 16. SAFE's ADA and Rehabilitation Act claims were dismissed without prejudice for failing to state a claim, given that SAFE had alleged that the County had discriminated against SAFE, and the ADA prohibits discrimination against disabled individuals. Id.

On July 26, 2010, plaintiffs filed the instant action alleging violations of the ADA and the Rehabilitation Act. Remaining are plaintiffs' claims against the County.

## STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond

4 - OPINION AND ORDER

the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

The County moves for summary judgment on grounds that it did not discriminate or retaliate against plaintiffs based on their disabilities, and that plaintiffs are not entitled to peer-provided mental health services under the ADA or Rehabilitation Act. Plaintiffs respond that the County discriminated against them by denying them access to SAFE's peer-run services on the basis of their mental disabilities, treated SAFE and Valia differently due to plaintiffs' mental disabilities, and retaliated against them for opposing the County's unfair treatment of SAFE and the cancellation of its contract.

In order to sustain a claim of disability discrimination under Title II, plaintiffs must allege that: 1) they are "individual[s] with a disability;" 2) they are "otherwise qualified" to participate in or receive the benefit of County services; 3) they were "excluded from participation in or denied the benefits" of

5 - OPINION AND ORDER

County services or were otherwise discriminated against; and 4) the County's exclusion, denial of benefits, or discrimination was by reason of their disabilities. <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam); 42 U.S.C. § 12132. Similarly, to bring suit under § 504 of the Rehabilitation Act, plaintiffs must show that: 1) they are individuals with a disability; 2) they are otherwise qualified to receive the asserted benefit; 3) they were denied the benefits of the program solely by reason of their disabilities; and 4) the program receives federal financial assistance. <u>Wong v. Regents of Univ. of Calif.</u>, 192 F.3d 807, 816 9th Cir. 1999).

It is undisputed that plaintiffs are disabled or otherwise qualified to receive or participate in the County's mental health programs and services. It is also undisputed that the County took issue with the administration of Valia and SAFE and the alleged conduct of Ewbank, leading to termination of Valia's and SAFE's contracts with the County. Further, the evidence shows that plaintiffs disagreed with the County's treatment of Valia and SAFE when audited and investigated by the County, and that plaintiffs disputed the veracity of the many allegations leveled against Valia, SAFE, and Ewbank regarding the fraudulent use of public monies, inadequate record keeping, and other alleged improprieties. In fact, plaintiffs' arguments generally attempt to vindicate SAFE and Ewbank, relitigate the termination of SAFE's and Valia's

6 - OPINION AND ORDER

contracts, and validate the benefits and efficacy of peer-provider mental health services.

However, the only issue for this court to decide is whether the County terminated SAFE's and Valia's contracts or otherwise denied or excluded plaintiffs from mental health services due to plaintiffs' mental disabilities. I find that plaintiffs present no evidence giving rise to an inference that the County terminated Valia's and SAFE's contracts due to plaintiffs' disabilities or as pretext for discrimination against plaintiffs, or that the County otherwise denied or excluded plaintiffs from peer-provider services based on their disabilities.[1]

For example, plaintiffs cite certain evidence that purportedly reveals discriminatory animus toward Ewbank on the part of certain County employees. However, the evidence cited does not support plaintiffs' contentions. Compare Pls.' Amended Response at 33-35 with Pls.' Exs. 33, 38, 50.1, 53.1; Handy Dep.; Jones Dep.; Johnson Dep.; Farivar Dep. Instead, much of the evidence supports the County's assertions that SAFE was not compliant with Medicaid or auditing requirements, that other service providers were treated similarly, and that the County received serious complaints about Ewbank such as "throwing scissors" at Valia workers and speaking

---

[1] Although Magistrate Judge Coffin declined to accept plaintiffs' late filings into the record and I adopted his ruling, I nevertheless reviewed all of the evidence submitted by plaintiffs in light of their pro se status.

7 - OPINION AND ORDER

unprofessionally about County employees. See, e.g., Pls.' Exs. 38, 50.1; Defs.' Ex. 5. Further, some of plaintiffs' evidence appears unrelated to their current allegations and is beyond the relevant limitations period in any event. See Pls.' Exs. 20-22.

Granted, the evidence as a whole supports the inference that certain County employees believed Ewbank to be abusive, corrupt, and/or incompetent; and that this belief, along with Valia's admitted lack of Medicaid compliance, were the reasons the County terminated SAFE's and Valia's contracts. See, e.g., Defs.' Exs. 5, 7, 9, 10-11 (filed under seal), 14. However, even if the court accepts plaintiffs' contention that the allegations against Ewbank were actually untrue, that fact does not support a finding that the County terminated its contracts with Valia and SAFE because of plaintiffs' disabilities. To the contrary, a Lane County jury found that the County did not breach its contracts with SAFE or Valia, and that SAFE breached its contract with the County. Defs.' Ex. 16.

Plaintiffs also argue that SAFE and Valia were not treated the same as other mental health service providers and were not given the same opportunities to correct their record-keeping and billing errors. However, plaintiffs present no evidence to rebut the County's assertion and evidence that other service providers were required to correct their problems and meet compliance standards to maintain County approval. Regardless, plaintiffs fail to show that the County's allegedly different treatment of SAFE and Valia was

8 - OPINION AND ORDER

based on plaintiffs' disabilities.

The only evidence that remotely suggests discriminatory animus toward any plaintiff is a County employee's alleged comment that Ewbank was "cycling through" a lot of history, which arguably could be perceived as a comment on Ewbank's mental disability. See Handy Dep. at 42. However, the person to whom the employee spoke did not perceive it as a discriminatory comment. Id. at 45. Regardless, I cannot find that this lone comment is sufficient to defeat summary judgment in light of the evidence as a whole, the vast majority of which supports the County's explanation for terminating its relationships with SAFE, Valia, and Ewbank.

To the extent plaintiffs allege that the County violated the ADA's "integration mandate," they fail to present evidence that they were denied or excluded from community-based mental health services. Granted, the County must "provide community-based treatment for persons with mental disabilities" when such placement is deemed appropriate, "and the placement can be reasonably accommodated, taking into account the resources available." Olmstead v. L.C., 527 U.S. 581, 607 (1999); see also Brantley v. Maxwell-Jolly, 656 F. Supp. 2d 1161, 1169-70 (N.D. Cal. 2009).

However, it is undisputed that the County continues to provide mental health services - including community-based treatment - and that such services are available to and accessed by plaintiffs. In fact, the County requested proposals for peer-run training

9 - OPINION AND ORDER

programs, offered a free peer-training program to LaneCare contractors in 2010, and continued some of the services provided by SAFE and/or Valia through Lane Independent Living Alliance (LILA), another service provider. Defs.' Ex. 21, 23; Pls.' Ex. 69. Plaintiffs are not entitled to a particular provider of such services or to services which meet their specific demands.

Finally, I find no evidence to support plaintiffs' claims of retaliation. See 42 U.S.C. § 12203(a) (prohibiting retaliation for opposing a practice deemed unlawful under the ADA, or for participating in an investigation or other proceeding related to the ADA). Plaintiffs contend that the County terminated SAFE's and Valia's contracts and subsequently interfered with plaintiffs' attempts to obtain positions with mental health providers, in retaliation for plaintiffs' opposition to the County's treatment of SAFE and Valia and their advocacy for peer-provider services.

However, no evidence suggests that the County severed its relationship with SAFE or Valia because of plaintiffs' concerns or advocacy to maintain those programs. As explained above, much of the evidence supports the County's assertions that the contracts were terminated due to auditing problems and the failure to adhere to regulatory requirements, along with the complaints about Ewbank; the evidence does not give rise to an inference of retaliation. See, e.g., docs. 256, 259; Defs.' Exs. 5, 7, 9, 10-11 (under seal), 14. The evidence also suggests that the County was willing to allow

10 - OPINION AND ORDER

SAFE and/or Valia to continue as a non-Medicaid service provider. E.g., Pls.' Ex. 54.2. Further, it is undisputed that plaintiffs were not excluded from receiving community-based services and in fact continued to do so. Defs.' Exs. 1-4; Pls.' Ex. 69.

To the extent plaintiffs argue that the County retaliated against them by interfering with their ability to provide peer-run services with LILA, the evidence does not support their contention. Rather, the evidence shows that plaintiff Snow provided services for LILA and resigned from that position for reasons unrelated to the allegations against defendants. Newton-Tapia Decl. (doc. 237) Ex. 1 at 2. Plaintiff Thoms also admitted that she was excluded from employment with LILA due to her criminal record. Id. Ex. 2. Ewbank admitted that he never sought employment with LILA, and he therefore could not have been denied employment or a position. Ewbank Decl. (doc. 246) at 3. Plaintiffs emphasize that a County employee explained to LILA that although Ewbank could receive services from LILA, he "would not be involved as an employee." Pls.' Ex. 69. However, plaintiffs fail to present evidence - other than unsupported speculation - that this comment was in retaliation for any protected activity by Ewbank.

Ewbank also alleges that County employees "reported" his activities to the Oregon Department of Justice (DOJ) in retaliation for his advocacy on behalf of himself, SAFE, and Valia. However, the evidence presented shows that a DOJ investigator contacted the

11 - OPINION AND ORDER

County, stated that Ewbank and SAFE "have historically experienced great difficulty complying with the reporting requirements of the Charitable Trust and Corporation Act," and asked for an update regarding the County's investigation of SAFE. Pls.' Ex. 92.4. Therefore, the evidence does not support this claim.

Finally, plaintiffs contend that the County improperly interfered with a contract between Crystal Dimensions (Ewbank's current employer) and Laurel Hill, a LaneCare contractor. Apparently, in mid-2010, Crystal Dimensions had entered into a contract proposal to provide peer-provider training to Laurel Hill. On September 28, 2010, the County announced free peer-provider training for LaneCare contractors, an announcement sent to all LaneCare contractors. Defs.' Ex. 23. The training program was developed after a LaneCare manager requested referrals for peer-provider training in April 2010. Defs.' Ex. 21 at 2. Laurel Hill attended the County's free training program, presumably at the expense of its agreement with Crystal Dimensions. However, plaintiffs present no evidence that the County intentionally caused Laurel Hill to breach its agreement with Crystal Dimensions in retaliation for plaintiffs' conduct. Moreover, no evidence suggests that County employees coerced Laurel Hill into cancelling Crystal Dimensions' training session or had the authority to act on Laurel Hill's behalf. Therefore, plaintiffs' retaliation claims fail to survive summary judgment.

12 - OPINION AND ORDER

## CONCLUSION

Defendant Lane County's Motion for Summary Judgment (doc. 212) is GRANTED. This action is HEREBY DISMISSED.

IT IS SO ORDERED.

DATED this 3RD day of ~~September~~ October, 2013.

_____
Ann Aiken
United States District Judge

13 - OPINION AND ORDER